This is an appeal from a decree of the Court of Chancery advised by Vice-Chancellor Berry on a bill for the construction of the will, and codicil thereto, of Howard Whitfield, a resident of Red Bank, Monmouth County, who died on September 20th, 1938. The will is dated December 13th, 1930, and the codicil February 6th, 1937. Both were admitted to probate in the New Jersey Prerogative Court and letters testamentary were issued to Theodore D. Parsons and Harry B. Heaviland, who qualified as executors and trustees thereunder. The value of testator's estate approximated $131,522.58, consisting of personalty of a value of $43,562.58, which included 248 shares of stock, out of a total issue of 250 shares, in the Whitfield Paper Works, and real estate valued at approximately $127,000, less mortgages of $40,000.
The testator was married twice, his first wife being Eleanor Whitfield, later Eleanor Simpson, who divorced testator on November 8th, 1926. On November 17th, 1926, testator married Florence Standinger. By his first wife testator had two sons, Frank F. Whitfield and Harold R. Whitfield, both of whom are of full age. Harold R. Whitfield was an incompetent and his brother Frank was appointed his guardian and the bill was filed for Frank and his incompetent brother, as the next of kin and heirs-at-law of the testator.
Testator had no children by his second marriage. His second wife died August 13th, 1936, about six months before *Page 354 
the codicil was executed. Pending the suit the first wife died, and there now remain only the two sons by the first marriage as the next of kin and heirs-at-law of the testator.
By his will the testator provided for the payment of funeral expenses and debts. By the second clause he provided for the opening of his cemetery plot for the burial of his wife, his incompetent son and his sister, and further provided that, in the event that no issue should be born of his then wife, the "cemetery plot shall be perpetually closed to any further burials."
The third clause, which is the subject of controversy in this case, reads as follows:
"Third: All the rest, residue and remainder of my estate of whatsoever it may consist and wheresoever situate, I give, devise and bequeath unto my executrix in trust to hold the same, and save and excepting the real estate at No. 73 Broad Street and 16-18 Wallace Street, in the Borough of Red Bank, in her discretion to sell, mortgage or lease the same, and to invest and re-invest the proceeds thereof in proper securities, to collect and receive the income and profit from and of the principal thereof, and to pay over the net income therefrom to my wife, Florence Whitfield, in equal quarterly installments for and during the term of her natural life.
"If there be any children born of the marriage between my wife, Florence Whitfield, and myself, and my wife shall die prior to said child or children arriving at the age of forty years, I then direct my executors hereinafter named to apply so much of the income from the corpus of my estate for the proper support, maintenance and education of said child or children as in their discretion and good judgment they shall deem necessary, and I direct my executors to accumulate in the meantime any surplus income which shall be added to the corpus of said estate. When such child or children shall attain the age of forty years or should my wife die subsequent to such child or children attaining the age of forty years then upon the death of my wife, Florence Whitfield, I direct my executors to pay over the principal of my said estate together with all accumulation thereon in equal shares to my child or children, their heirs and assigns forever."
The fourth clause provides that the provisions in the will for the wife are in lieu of dower and all other interest in his estate.
The fifth clause provides that if there be no issue of his present marriage, and his son Harold and his sister Grace Whitehouse shall survive his wife, Florence, his executors *Page 355 
shall pay to his son Harold, or his legal representatives, the sum of $1,000 per year, payable in quarterly installments, for and during the term of his natural life, or until he shall have been declared competent, and also directs his executors to pay unto his sister, Grace Whitehouse, an annuity of $1,000 payable in quarterly installments, for and during the term of her natural life, from and after the death of his wife Florence.
The sixth provides that if, after the death of his present wife, Florence, his first wife, Eleanor, should become destitute and without means of support, his executors shall pay to Eleanor the sum of $2,000 per year, in quarterly installments, during her natural life or until she shall have sufficient means for her support, her need for such support to be determined solely by his executors.
The seventh clause of the will directs the formation of "The Howard Whitfield Foundation" by the executors, the general object and purpose of which Foundation "shall be to provide funds in the form of scholarships to furnish pecuniary aid to young men and young women who have exhibited an earnest desire for a higher education, and who have also given evidence of natural talents and faculties, and who, except for such aid and assistance as may be given them, would be unable to pursue such studies." The testator then directs that, after the death of his wife, "all my real estate and personal property shall be transferred to and placed in the name of said corporation so that `The Howard Whitfield Foundation' shall own in its own right and title all of my real estate and personal property." It then provides for the personnel of the board of directors, for the maintenance of the real estate owned by the testator, the accumulation of income, the character of scholarships, and the method of selecting the young men and young women for such scholarships to be awarded.
The eighth clause of the will provides for improvement by the Foundation of the Whitfield Building and the contingent occupancy of a portion thereof by a Masonic lodge.
The ninth clause provides that the Foundation is to take and to hold as long as practicable the stock of corporations *Page 356 
in which he was interested and the real estate of which he died seized.
The last clause named the testator's wife, Florence, as executrix, and, upon her decease, provided that the defendant Theodore D. Parsons and another become executors and trustees under the will.
The testator also executed a codicil about six months after his second wife's death. This codicil provided for a bequest of $500 to Fairview Cemetery for care of his plot, provided that Grace Whitehouse's annuity should be paid in monthly instead of quarterly installments, and by the third paragraph directed that the business of the Whitfield Paper Works shall be continued under the direct management of Miss Gertrude Happ, his secretary, and provided for her compensation.
The fourth paragraph of the codicil ratifies and confirms the will in all other respects.
The complainant's bill seeks a construction of the will and claims that the complainants, the two sons by the first marriage, are entitled to the residue of the estate under the third paragraph of the will. It seems to us, as determined by the learned Vice-Chancellor, that the will is clear as to the disposition to be made of the property after the death of the second wife, when it is to go to any children born of the second marriage only, and, after the payment of the annuities provided by the will, the residue is to go to the Foundation. The appellants allege that the language of the third paragraph, particularly the last sentence, that after the death of Florence the executors are to pay over the principal "to my child or children," does not limit the passing of the residue to a child or children of the second marriage, but that it goes to any child or children of the testator. Certainly a reading of the whole paragraph clearly indicates that the child or children therein designated are those born of the second marriage. This is further supported by the testator's provisions for annuities to his incompetent son and to his sister. The annuity to the son is during his incompetency. Clearly, if there was a vesting of the estate in this son, such a provision would be needless. So that the Vice-Chancellor properly construed the will in holding that, upon the death of *Page 357 
Florence without issue, the estate passed to the Foundation, subject to the annuities.
The appellants now argue that the gift to the Whitfield Foundation is not a valid charity and, therefore, inasmuch as part of it, namely that part relating to the use of the fourth floor of the Whitfield Building by a lodge, is not a charity, the entire provision is rendered invalid. In the first place, it does not appear in the evidence that the beneficiary named, the designated Masonic lodge, is not a charity. It was not made a party to the proceeding, and there is no proof upon the subject. But apart from that, this point was not raised in the court below. It was not raised by the bill, and it appears by the memorandum of the Vice-Chancellor, "The validity of the will was attacked by the complainant on numerous grounds, all of which have been abandoned except the ground of inconsistency between the third, fifth and sixth paragraphs on the one hand, which provide for a life estate to the testator's wife and children by her, if any, and for annuities for testator's incompetent son, his sister and his divorced wife, and paragraph seventh on the other hand, which presents an elaborate plan for the formation of the `Howard Whitfield Foundation' to provide educational scholarships for worthy youth and to which foundation the executors and trustees are directed to convey the residuary estate. It is claimed that this alleged inconsistency invalidated the seventh paragraph of the will and that therefore testator died intestate as to the residue of his estate, and that such residue vests in the complainant and his brother as heirs-at-law."
In the stipulation there is nothing said about this question. It was not raised in the court below and, therefore, is not subject to review here.
The question of the provisions in the third paragraph of the codicil being against public policy is not a matter for determination under the bill in this case, because the business is operated by a corporation and the corporation certainly has the power to continue and to operate. Whether the provisions in the codicil are binding upon the corporation is another matter, but certainly it has nothing to do with the construction of the will. *Page 358 
So we conclude it is clear that the will speaks for itself, and the valid, reasonable construction is the one given by the learned Vice-Chancellor. The decree is affirmed.
For affirmance — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 14.
For reversal — None.